E-FILED
Tuesday, 24 November, 2015 04:22:03 PM
Clerk, U.S. District Court, ILCD



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
OFFICE OF THE CLERK

# RUSHVILLE
# SCANNING COVER SHEET

**Notice – Please read and carefully follow these instructions.**

1. Each pleading must have this cover sheet on top.
2. Each pleading must be legible. Typed, double-spaced pleadings are preferred.
3. All pages must be numbered.
4. Each pleading must be scanned separately as one complete document. A pleading may not be scanned page by page. If the pleading is more than 25 pages, then the pleading must be scanned and submitted in multiple emails with a maximum size of 25 pages. The subject line of each email should specify the range of pages included within. (For example, a 40 page pleading would be broken into 2 emails, the first with a subject line "Email 1 of 2 – Pages 1-25" and the second with a subject line of "Email 2 of 2 – Pages 26-40".)
5. Discovery requests and responses are not filed with the Court unless they are part of a motion to compel. Discovery requests and responses shall not be electronically filed per Local Rule 26.3. However, a Certificate of Service may be scanned stating you have served your discovery documents on the other parties in the case.
6. Only lines and boxes included on this form should be filled out. Do not provide any other information regarding your pleading on this Scanning Cover Sheet.

**Please complete the following (Print):**

Date: November 2015

Name: Ronnie Brazzel v. Liberty Healthcare Corporation, et al.,

Case Number: ______________ ☒ (Check here if this is a new case)

**Type of Pleading (Check only one):**

☐ Motion / Petition

☐ Response / Reply

☐ Other (Specify) 1983 Civil Rights Complaint

Title of Pleading: ______________
(For Example, "Motion to Compel" or "Response to Summary Judgment")

Number of Pages for this Pleading (Not including Scanning Cover Sheet): 13

IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

RONNIE BRAZZEL,
Plaintiff,

VS.

LIBERTY HEALTHCARE CORPORATION, DR. SHAN JUMPER, SHARLENE CARAWAY, DR. MICHAEL BEDNARZ, KRISTA WILCOXEN, JAMES DIMAS, and GREGG SCOTT,
Defendants.

Case No.________________

JURY TRIAL DEMANDED

## C O M P L A I N T

This complaint asserts a civil rights action pursuant to Title 42 of the United States Code, Section 1983 for violation of certain rights of Plaintiff's civil rights as guaranteed under the United States Constitution and the Illinois Constitution as well as numerous and various federal and state codes and statutes.

## I. FEDERAL JURISDICTION

Jurisdiction is based on 28 U.S.C. § 1331, a civil action arising under the United States Constitution, other federal laws and pendent jurisdiction of civil actions arising under the Illinois Constitution and other state statutes. All claims are based in violation of federally secured rights, federal questions, and in violation of the same or similar rights guaranteed additionally by the State of Illinois.

## II. THE PARTIES:

A. **The Plaintiff:**

1. Mr. Ronnie Brazzell
IL Dept of Human Services
Treatment & Detention Facility
17019 County Farm Road
Rushville, Illinois 62681

B. **The Defendants:**

1. Liberty Healthcare Corporation
(Herbert T. Caskey, M.D. President)
401 E. City Ave. Ste., 820
Bala Cynwyd, PA 19004

The Plaintiff does not known the local contact information or addresses for any Illinois Offices, though they must exist, and the TDF may be one.

2. Dr. Shan Jumper, Clinical DIrector
IL Dept of Human Services
Treatment & Detention Facility
17019 County Farm Road
Rushville, Illinois 62681

Defendant Jumper is sued in both his official and his individual capacities, at all times pertinent, Defendant Jumper was acting under the Color of State Law.

3. Sharlene Caraway, Associate Clinical Director
IL Dept of Human Services
Treatment & Detention Facility
17019 County Farm Road
Rushville, Illinois 62681

Defendant Caraway is sued in both her official and her individual capacities. At all times pertinent hereto, Defendant Caraway was acting under the Color of State Law.

4. Dr. Michael Bednarz, Facility Medical Director
IL Dept of Human Services
Treatment & Detention Facility
17019 County Farm Road
Rushville, Illinois 62681

Defendant Bednarz is sued in both his official and his individual capacities. At all times pertinent hereto, Defendant Bednarz was acting under the Color of State Law.

5. Krista Wilcoxen, Rehabilitation Director
IL Dept of Human Services
Treatment & Detention Facility
17019 County Farm Road
Rushville, Illinois 62681

6. James Dimas, Secretary of the Dept of Human Services
IL Dept of HUman Services
100 West Randolph Street
Chicago, Illinois 60604

Defendant James Dimas is sued in both his official and his individual capacities. At all times pertinent hereto, Defendant Dimas was acting under the Color of State Law.

7. Gregg Scott, Program Director
IL Dept of Human Services
Treatment & Detention Facility
17019 County Farm Road
Rushville, Illinois 62681

Defendant Gregg Scott is sued in both his official and his individual capacities. At all times pertinent hereto, Defendant Scott was acting under the Color of State Law.

## III. LITIGATION HISTORY

A. The Plaintiff has not brought and prosecuted any other lawsuit in state or federal court dealing with the same facts involved in this case.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

A. The is a grievance process available at this facility.

B. The Plaintiff is not a prisoner, is not being held in connection with any crime, or awaiting prosecution. The Plaintiff is not required under the PLRAS to exhaust his Adminsitrative Remedies before filing suit.

C. The Administration has foreclosed upon the filing of grievance related to the violation of State Law.

D. The Administration, AKA, the Defendants, have also made treatment related issues "non-grievable".

E. For all of the reasons stated above, but in no way limited limited to just those reason or excuses, the Plaintiff has exhausted his administrative remedies and that process is now complete.

## V. STATEMENT OF FACTS AND CLAIMS:

1) The Plaintiff is civilly committed, (detained) at the Rushville Treatment & Detention Facility ("TDF") for the purpose of receiving Sex Offender Specific Treatment designed to address the reason why the Plaintiff was committed to this facility.

2) The entire purpose of Plaintiff's detention is to treat Plaintiff's alleged mental illness(s) which predispose Plaintiff to acts of sexual violence at some yet unseen future date through an alleged lack of volitional control. Plaintiff's detention is not meant to punish or deter future crimes in the way a prison sentence does, and in fact under the law, punishment is prohibited as it relates to the Plaintiff as he is at the TDF for the purpose of receiving treatment.

3) It is under the Illinois Sexually Violent Persons Commitment Act ("SVP ACT" or "THE ACT") 725 ILCS 207/1 et seq., that the Plaintiff is detained and housed by authority of the Illinois Department of Human Services ("IDHS"). The IDHS contracts with Liberty Healthcare Corporation to provide clinical staff to provide some treatment to the Plaintiff and the Security Therapy Aides ("STA") provide the balance of the care and treatment given to the Plaintiff.

4) On August 24, 2012, the Sex Offender Evaluation and Treatment Provider Act ("SOETP ACT") was signed into law by the governor with an effective date of July 1, 2013, (225 ILCS 109/1 et seq., P.A. 97-1098, S.B.3638).

5) The Purpose of the SOETP Act: Is to establish <u>standards of qualifications</u> for sex offender evaluators and sex offender treatment providers, thereby protecting the public from persons

who are unauthorized or unqualified to represent themselves as licensed sex offender evaluators and sex offender treatment providers, and from unprofessional conduct by persons licensed to practice sex offender evaluation and treatment." 225 ILCS 109/5.

6) The SOETP Act bars any unlicensed individual from providing treatment to sexually violent person: "No person may act as a sex offender evaluator, sex offender treatment provider, or associate sex offender provider as defined in this act for the provision of sex offender evaluations or sex offender treatment pursuant to the Sex Offender Management Board Act, The Sexually Dangerous Persons Act, or the Sexually Violent Persons Commitment Act unless the person is licensed to do so by the Department. Any evaluation or treatment services provided by a licensed health care professional not licensed under the Act shall not be valid under the Sex Offender Management Board Act, The Sexually Dangerous Persons Act, or the Sexually Violent Persons Commitment Act." 225 ILCS 109/40(a).

7) While it is often debated what treatment is, the entire purpose of the SOETP act was to ensure public trust and <u>establish standards of qualifications</u> (see ¶ 5 above) with this benchmark in mind, we have a test that both clearly establishes 1) that the Defendants in this complaint violated the law, and; 2) subjected the Plaintiff to conditions that fell well below the accepted professional standards for what actual, meaningful, treatment is. While the Plaintiff is aware that he is not entitled to the best treatment there is, in this case he was not provided any treatment whatsoever and this has triggered the Plaintiff's Constitutional protections under the Fourteenth Amendment.

8) Further violation of the SOETP Act include, but in no way are limited to, (a) "aiding, abetting, assisting, procuring, advising, employing, or contracting with any unlicensed person to provide sex offender evaluations or treatment services contrary to any rules or provisions of this Act" and (b) "knowingly delegating professional responsibilities to a person unqualified by training, experience, or license to perform." 225 ILCS 109/70(a)(6),(a)(10).

9) There is absolutely no doubt that it is illegal to hire or maintain any unlicensed clinical staff, or even advertise for one. yet that is exactly what Liberty Healthcare Corporation has done. The Liberty Healthcare Corporation publishes a job listings called "The Freedom to Succeed" and for the Rushville facility Liberty is and has been seeking to hire "Clinical Therapist (unlicensed / license-eligible)" In this same job listing, Liberty further advertises that this is an "Opportunity to work along side a talented team of dedicated clinicians within a well-refined research-based treatment program." Liberty is clearly, and deliberately seeking to hire unlicensed and unqualified therapist. Assuming that any readers still want to view the facts with closed eyes and or mind, further proof is available through the vast number of unlicensed and untrained staff hired and employed at the facility which should eliminate any doubt as to Liberty Healthcare's intent.

10) Liberty Healthcare Corporation signs all their staff, contracted employees, to a contract that contains the following statement found on page 3 of their standard contract: "All Vendor personnel shall be licensed within eighteen months of the time of employment." While at first glance the Liberty Contract seems sound, it is completely illegal as it actually requires a contractual

agreement to engage in illegal activity. The provisions of 1) being hired without a license violates valid Illinois Statute, and; 2) entering into a contract that allows for unlicensed employment for 18 months again violates valid Illinois Statute as well as assuring that any treatment provided by said illegal employees is invalid and worthless to the person receiving it.

11) The Treatment program itself, is driven by research goals and not focused on treating the Plaintiff's mental condition with any known, readily accepted, treatment for any clearly identified mental illness. The Defendants have changed the structure and concepts of the treatment that they do offer so often that the Plaintiff can not carry forward what was once standard practice or the accepted normal at the facility. Test that were routinely given and used to indicate that the Plaintiff was incapable of learning or normal overall functioning were simply discontinued and not replaced with anything. As the research changes, so does the Plaintiff's treatment, mental conditions, and all related approaches to his confinement. This ever changing change is do to research and it needlessly delays, and or, prevents Plaintiff from ever actually receiving any treatment whatsoever.

12) Defendant Gregg Scott, the Senior Program Director has at his command a staff of STA's. These STA's are defined everywhere as part of the Plaintiff's treatment team. The STA's decide what the Plaintiff can and cannot do based upon his alleged mental illness and these STA's are so interconnected with everything the Plaintiff does they even decide what movies the Plaintiff can watch and how he should dress and talk. The STA's are the front line placed there personally by Defendant Greg Scott to guide the treatment

Plaintiff receives despite not being licensed under the SOETP Act.

13) The purpose of the Plaintiff's Commitment is for treatment, not to increase the income potential of Liberty Healthcare Corporation by providing a test subject for research in their "research-program," nor is it to provide a platform to teach unlicensed, untrained and unqualified workers for a future career. Plaintiff is here to benefit his future not secure advances for Liberty Healthcare.

14) Defendant Gregg Scott, although not licensed under the SOETP Act and lacking any medical expertise, is the Program Director for the TDF and an employee of the IDHS and not Liberty. While defendants Jumper and Caraway eventually obtained licenses under the SOETP Act in 2014, with Caraway only securing an Associate Providers License. Noting for the record, the only license ever held by Caraway despite her position as Associate Director is the Associate Providers License, which is again the lowest level license obtainable under the SOETP Act. Additionally, upon information and believe, Caraway is an example of a contracted employee that worked well past 18 months without ever being licensed. Defendant Scott remains unlicensed and a Doctor of nothing, yet in violation of valid State Statute he still shamelessly runs the TDF as if he invented psychology. Defendant Scott, in conjunction with the other named defendants approves or denies all Plaintiff's treatment including his property, media, movement and all other aspects of Plaintiff's Treatment. In doing so, and for day to day decisions, Scott relies upon the recommendation of unlicensed, unqualified research trainees placed here by Liberty with the full knowledge of the other Defendants. Defendant Scott holds this authority over the Plaintiff's treatment despite the fact that Defendant Michael Bednarz is an expert, he is also an active

member of the public body known as the Sex Offender Evaluation and Treatment Provider Licensing and Disciplinary Board. Defendant Bednarz is an expert in the requirements of the SOETP Act, is more than aware of the fact the other defendants in this case are and have been violating the law and trampling the Plaintiff's rights and Defendant Bednarz has taken no corrective action to correct the complained of issues.

15) The Plaintiff is entitled to treatment for the condition that lead to his commitment. The Defendants primary goal should be focused on that treatment and not conducting research with unlicensed and unqualified treatment providers. Constitutionally, the Plaintiff is entitled to treatment that has a chance at affecting his serious medical condition, producing changes in it that would allow for his eventual release.

16) Defendant Wilcoxen is a PSA that runs the Rehabilitation department, she assigns all vocational tasks which are part of the Plaintiff's Treatment Plans. Defendant Wilcoxen scores Plaintiff's participation in this treatment and recommends areas where the Plaintiff needs attention, improves, or punishment. Defendant Wilcoxen like the others is not licensed under the SOETP Act. The Plaintiff being entitled to actual treatment and not simple being part of an ongoing, long, drawn-out research project is being denied said treatment.

17) The Defendants have additionally reduced the hours of treatment from 18 hours a week to as little 4-6 hours a week. The Defendants decided to employ unlicensed, untrained, and unqualified providers incapable of treating the Plaintiff. The Defendants' reliance on these unqualified and untrained clinical staff has

resulted in unqualified personnel writing and placing treatment Progress notes in the Plaintiff's permanent clinical records that are relied upon by the State's Evaluators during SVP proceedings to deny Plaintiff conditional release. The Evaluators who review the Plaintiff's records are unknowingly reviewing notes from untrained and likely biased writers that have not been properly trained to separate their personal feelings from their professional role as a note taker, as they do not yet have a professional role to play. Making this issue even more complex is the problem with expert witnesses and their absolute immunity afforded them by the rule of law making it extremely difficult to impress upon these hired expert witnesses the importance of verifying the credibility and reliability of the material that they are reviewing. After all, regardless how horrible of a job any expert-witness-evaluator does while relying upon the notes taken by unlicensed and unqualified therapist, or test results for that matter, such an expert witness enjoys absolute immunity and is absolutely fearless of any potential liability under a 1983 complaint, or anywhere else.

18) The Plaintiff is entitled to relief in this complaint as he has been denied any treatment whatsoever. The Plaintiff Complains of not being treated for the condition he was alleged to have suffered from, but rather used as an experimental subject in a research project designed to train workers while gathering data for resale. While the complete, willful, disregard for the valid state statute referenced repeatedly herein, the SOETP Act does not in and of itself establish a federal violation, the SOETP ACT does establish what the acceptable standards of treatment for for this Plaintiff are. Plaintiff has received no treatment!

## VI. RELIEF REQUESTED:

WHEREFORE, for the reasons and violation complained of above, the Plaintiff, Ronnie Brazzell, Pro Se, respectfully PRAYS that this Honorable Court will enter and issue an Order:

1) Finding and enunciating a declaratory judgment that the events and actions complained of herein violated the Fourteenth Amendment to the United States Constitution.

2) Awarding Plaintiff reasonable cost and attorneys fees.

3) Awarding Plaintiff compensatory damages in the amount of $125,000.00 with said damages to be proven up at trial.

4) Awarding Plaintiff punitive damages in the amount of $125,000.00 with said damages to be proven up at trial.

5) Awarding Plaintiff both preliminary injunction preventing any further violation of law and unlicensed staff from working at the TDF, and permanent injunctive relief.

6) Awarding Plaintiff any further such relief as this Court may find just, fit, and equitable.

Respectfully submitted;

Dated November 23, 2015 BY Ronnie Lee Brazzell

Mr. Ronnie Brazzell, Plaintiff

Mr. Ronnie Brazzell
IL Dept of Human Services
Treatment & Detention Facility
17019 County Farm Road
Rushville, Illinois 62681
Pro Se